# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2521

_____

| | | |
|---|---|---|
| Philomena T. Badami; Stephen J. Badami; Michael James Badami; Thomas Joseph Badami; Kimberly Ann Badami; John Paul Badami; Patrick Raymond Badami; Daniel Vincent Badami; David Christopher Badami; Matthew Lawrence Badami, | * * * * * * * * * | |
| | * | Appeal from the United States District |
| | * | Court for the Western District of |
| Appellants, | * | Missouri. |
| | * | |
| v. | * | |
| | * | |
| Terry W. Flood; Robert C. Conn; Flood & Conn Enterprises; Jay Ann Flood; Terry W. Flood Real Estate Company, | * * * * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 16, 2000

Filed: June 5, 2000

_____

Before MCMILLIAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

FLOYD R. GIBSON, Circuit Judge.

Plaintiffs Philomena T. Badami, Stephen J. Badami, Michael James Badami, Thomas Joseph Badami, Kimberly Ann Badami, John Paul Badami, Patrick Raymond Badami, Daniel Vincent Badami, David Christopher Badami, and Matthew Lawrence Badami (hereinafter "the Badamis") brought suit under the Fair Housing Act, 42 U.S.C. §§ 3601-3631 (1994), claiming the defendants discriminated against them, based on the size of their family, in their search for a rental home. After a two-day trial, a jury awarded the Badamis $1,100 in compensatory damages. Terry W. Flood, Robert C. Conn, Flood & Conn Enterprises, Jay Ann Flood, and Terry W. Flood Real Estate Company, (hereinafter "the defendants") do not appeal this verdict. The Badamis, however, appeal several rulings of the district court. We affirm in part, reverse in part, and remand.

## I.    Background

As the jury found in favor of the Badami family, the following facts are recited in the light most favorable to the jury's verdict. In June of 1994, the Badami family began a search for rental housing in anticipation of their relocation to the Kansas City, Missouri area from their current residence in Claremore, Oklahoma. Mrs. Philomena Badami contacted her sister-in-law, Ms. Bellafiore, who resides in the Kansas City area for assistance. On June 23, 1994, Ms. Bellafiore informed Mrs. Badami of a rental property offered in a local paper by the Terry W. Flood Real Estate Company.

From her home in Oklahoma, Mrs. Badami telephoned the real estate company and spoke with Terry W. Flood regarding a rental property located at 6008 North Michigan. Mrs. Badami informed the defendant that her family, which included her husband and eight children living in the home, was planning to relocate to Kansas City and wished to rent a home. Mr. Flood told Mrs. Badami that the 6008 North Michigan property had already been rented and was therefore unavailable. When Mrs. Badami asked about other properties for rent Mr. Flood informed her that nothing suitable for her family's size was available.

On June 25, 1994, Mr. Stephen Badami drove to Kansas City from Oklahoma. Mr. Badami obtained two lists of rental properties offered by the Terry W. Flood Real Estate Company. The rental lists were provided to the public free of charge and were available at the real estate office. On June 27, Mrs. Badami again called Mr. Flood to inquire about several properties on the rental lists. Mrs. Badami specifically inquired about six rental properties. Mr. Flood again informed Mrs. Badami that he had no properties available that were suitable for her family's size. Mrs. Badami requested a rental application but Mr. Flood reiterated that he had no properties large enough to accommodate the Badami family.

Although they had failed to secure permanent housing, the Badamis moved to Kansas City on June 30, 1994. The family spent one night at a hotel. The Badamis then placed their belongings in storage and stayed with family friends, the Millwoods, for the next fourteen days. During their stay with the Millwoods, the Badamis continued their attempts to secure rental housing.

In July of 1994, Mr. Badami contacted Mr. Flood regarding rental properties. In an effort to allay any fears regarding his credit-worthiness, as Mr. Badami was unemployed, he offered to pay Mr. Flood one year's rent in advance for a suitable rental home. Several days after this conversation, Mr. Flood informed Mr. Badami that he had located an available property for the family. Mr. Flood offered to rent a house located at 5519 North Seminole if the Badamis advanced one year's rent, at $1000 per month, as well as a security deposit of $3000.

The Seminole property was offered for rent to the public at $1000 per month with a $600 security deposit. Mr. Flood did not request, nor did he ever receive, a rental application from the Badamis. On July 7, 1994, Mr. Badami refused the rental terms offered by Mr. Flood on the Seminole property. This was the last conversation between the Badamis and Mr. Flood regarding any rental property.

After their two-week stay with the Millwoods, the Badami family moved into the home of Carl Palermo, a relative of Mr. Badami. The Badamis stayed with the Palermos for nearly four months while they sought to obtain a mortgage to buy a home. Mr. Palermo did not charge the Badami family rent. During this time, Mr. Badami secured two jobs to aid in the family's quest to qualify for a home mortgage. Mr. and Mrs. Badami testified that they had not wanted to purchase a home so soon after their arrival in Kansas City. However, their inability to find rental housing required them to purchase a house approximately one year ahead of schedule. In October of 1994, the Badamis purchased a house and moved from the Palermo home.

The Badami family filed this lawsuit on May 22, 1997, alleging that the defendants had discriminated against them based on familial status in violation of the Fair Housing Act. The Badamis sought compensatory and punitive damages, injunctive relief, and costs. Mrs. Philomena Badami pursued her family's cause pro se before the district court. The jury returned a verdict in favor of the Badamis and awarded $1100 in compensatory damages. The Badamis appeal, alleging the district court erred in failing to submit the issue of punitive damages to the jury and in excluding some evidence of actual damages.

## II.     DISCUSSION
### A.      Punitive Damages

The Badamis contend that the district court erred in failing to submit the issue of punitive damages to the jury. At the jury instruction conference, the district court ruled that the record did not contain sufficient evidence to support a punitive damages instruction. Upon thorough review of the record, we find that sufficient evidence was presented at trial to merit submission of punitive damages to the jury. We therefore reverse the district court's ruling and remand for trial on the punitive damages issues.

The Fair Housing Act provides for the recovery of punitive damages by victims of discriminatory housing practices. See 42 U.S.C. § 3613(c)(1) (1994). "[T]he assessment of punitive damages under the FHA is governed by federal rather than state law." United States v. Big D Enterprises, Inc., 184 F.3d 924, 932 (8th Cir. 1999), cert. denied, 120 S. Ct. 1419 (2000). Punitive damages are appropriate in a federal civil rights action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).

The Supreme Court recently addressed the meaning of the terms "malice" and "reckless indifference" as they relate to the standard for punitive damages in the Title VII context. See Kolstad v. American Dental Assoc., __ U.S. __, 119 S. Ct. 2118 (1999). The Court stated that "'malice' or 'reckless indifference' pertain to the [defendant's] knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 2124. The Kolstad Court further explained that, although conduct justifying a punitive damages award is sometimes characterized as egregious or outrageous, it "is not to say that [defendants] must engage in conduct with some independent, 'egregious' quality before being subject to a punitive award." Id. at 2126. In the Title VII context, it is sufficient that a defendant "discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. at 2125.

Although Kolstad concerned punitive damages in a Title VII employment discrimination case, and Wade addressed punitive damages in a § 1983 civil rights action, we believe the same standard for punitive damages applies in the Fair Housing Act context. See Alexander v. Riga, 208 F.3d 419, 430-32 (3rd Cir. 2000) (discussing applicability of Kolstad to Fair Housing Act violations). Applying that standard, we conclude that the district court erred in refusing to submit the issue of punitive damages to the jury.

At trial, the Badamis presented evidence that at least one of the rental homes that Mr. Flood stated to be unavailable had not been rented on the date Mrs. Badami spoke with Mr. Flood. Mrs. Badami presented evidence that Mr. Flood had been in the property management business for twenty-seven years. Moreover, Mr. Flood testified that he was aware of the Fair Housing Act and its prohibition of discrimination in rental housing on the basis of familial status.

As regards the requested $3000 security deposit on the Seminole property, Mr. Flood stated that the additional $2400 he requested of the Badamis (the difference between the deposit requested of the Badamis and the $600 deposit requested of other potential lessees) constituted additional rent. Mr. Conn, Flood's business partner, testified that the extra $2400 was "additional rent to protect [the Badamis] at the end of their lease in case they couldn't at that time pay or could not find some place else to live." Trial Tr. at 126.

Mrs. Badami elicited testimony from Mr. Flood that he was unaware of the Badami's financial situation beyond Mr. Badami's unemployed status. Mrs. Badami also called Cathy Cox, the real estate agent who found the house that the Badamis eventually purchased. Ms. Cox testified that she did not believe the Badami family was financially unable to afford suitable housing in July of 1994. Mr. Flood admitted at trial that he discouraged the Badamis from submitting a rental application because he was certain the family would not be approved for some rental properties. Finally, Mr. Flood testified that he felt the size of the Badami family might be an obstacle in securing a rental home.

We find this evidence sufficient to justify the submission of a punitive damages instruction to the jury. We are not prepared to characterize the defendants' conduct in this case as egregious per se. However, a reasonable jury could find the defendants acted with malice or reckless indifference that their actions might violate a federal statute of which they were aware. See Kolstad, 119 S. Ct. at 2124-25; Tyus v. Urban

Search Management, 102 F.3d 256, 266 (7th Cir. 1996) (finding that evidence of defendant's knowledge of Fair Housing Act and intentional disregard of the Act raised jury question on punitive damages issue). We therefore remand this case to the district court for a trial on the punitive damages issue.

### B.    Evidentiary Exclusions

The Badamis further contend that the district court erred in excluding certain evidence of actual damages. Mrs. Badami submitted to this Court an affidavit asserting that the district court excluded evidence of damages incurred by her family. Mrs. Badami alleges that the court excluded damages such as alternative housing costs, lost wages, and mental anguish and humiliation damages. Mrs. Badami avers that the conference during which the court excluded the evidence was off the record and urges us to consider her affidavit as a record of the court's ruling. The defendants have moved to strike the affidavit, and we hereby grant that motion.

Federal Rule of Evidence 103(a) provides that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." In order to challenge a trial court's exclusion of evidence, the issue must be preserved for appeal by making an offer of proof on the record. See Dupre v. Fru-Con Engineering Inc., 112 F.3d 329, 336 (8th Cir. 1997); Holst v. Countryside Enterprise, Inc. 14 F.3d 1319, 1323 (8th Cir. 1994). Mrs. Badami failed to make an offer of proof to the district court regarding the evidence allegedly excluded by the court.

Further, Mrs. Badami failed to follow the proper appellate procedure in her attempt to have this Court consider the excluded evidence. The Federal Rules of Appellate Procedure provide the course of action Mrs. Badami should have taken. Mrs. Badami's affidavit is not entirely improper, as FRAP 10(c) does allow an appellant

to prepare a statement recounting unrecorded proceedings before the district court. However, Rule 10(c) requires that the statement "be submitted to the district court for settlement and approval." Mrs. Badami failed to provide the district court with an opportunity to review, correct or approve the affidavit she submitted to this Court.

Alternatively, Mrs. Badami could have moved, pursuant to FRAP 10(e), to modify the record. Rule 10(e) provides that, when differences arise as to whether the record on appeal truly discloses what occurred in the district court, "the difference shall be submitted to and settled by [the district court]." Again, Mrs. Badami failed to provide the district court with an opportunity to correct any errors in the record. On appeal Mrs. Badami requests that, as she tried the case pro se, we forgive her procedural error. While we are mindful of the difficulties faced by pro se litigants, we must decline. Absent a record of the proffered evidence and the trial court's reasons for excluding it, meaningful appellate review is virtually impossible.

Even if this issue had been preserved on appeal, we have carefully reviewed the district court's rulings that are contained in the record and find no abuse of discretion. See United States v. Looking, 156 F.3d 803, 811 (8th Cir. 1998) (stating standard of review of district court's exclusion of evidence). We find the Badamis' other contentions on appeal to be without merit.

Accordingly, the district court's order denying the submission of punitive damages is reversed and the case is remanded for trial on the issue of punitive damages. The defendants' motion to strike the affidavit of Mrs. Badami is granted. In all other respects the trial court's decision is affirmed.

A true copy.

Attest:

   CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.